## J. S. GOODRICH *et al.* v. MARY J. MAGERS.

VENDOR AND VENDEE — *Bona Fide Purchaser — Finding, Sustained.* In this controversy, concerning the *bona fides* of the purchaser and ownership of land, the question was mainly one of fact, upon which the testimony given was conflicting; and it is held that the trial court had opportunities to determine the facts not possessed by this court, and upon a consideration of the whole evidence, that its finding is sufficiently sustained.

### *Error from Linn District Court.*

ACTION to quiet title. Trial by the court, and judgment for the plaintiff *Magers*, on December 8, 1885. The defendants bring the case here. The material facts are stated in the opinion.

*James D. Snoddy*, for plaintiffs in error.

*W. R. Biddle*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: On July 22, 1885, Mary J. Magers instituted an action in the district court of Linn county, against the plaintiffs in error, in which she alleged that she was the

owner and in the actual possession of the southwest quarter of section 12, township 20, range 23 east, situate in Linn county, and had been continuously in the possession of the premises since March 15, 1878. She further stated that J. S. Goodrich claims a lien upon the same premises, by reason of a judgment rendered in his favor against J. S. Magers on the 10th day of December, 1880, for the sum of $551.33; and it was further ordered that if the judgment was not paid within ten days, the premises should be sold as upon execution to satisfy the judgment and costs, pursuant to an attachment which had been issued in the action and levied upon the premises. She further stated that J. E. Moore, assignee of the La Cygne Exchange Bank, claims a lien upon the premises by virtue of a judgment rendered by the district court of Linn county, in an action wherein J. E. Moore, assignee, was plaintiff, and J. S. Magers was defendant, for the sum of $1,189.95, and that execution upon such judgment had been issued and levied upon said land, and that both these parties claimed that the attachments, judgments, and executions so levied upon the premises were valid and subsisting liens; but she averred that they were at no time liens, nor of any validity as liens upon the premises; that they formed a cloud upon the title, and prevented her from mortgaging the premises, or selling the same at a fair value. She prayed for a decree declaring her to be the owner in fee of said land; that the claims of the defendants should be declared void; that the attachments, judgments and executions are no liens on said premises, and that the defendants and all persons claiming under them should be enjoined from setting up or claiming any lien or interest in the premises by virtue of the attachments, judgments, or executions.

The defendants below answered, denying her ownership and actual possession of the premises, and alleging that the property belonged to J. S. Magers, and is liable for the payment of his debts. They set forth the judgments obtained against J. S. Magers, and the process issued thereunder, claiming that the judgments were wholly unpaid, and were valid and subsisting liens against the premises.

The case was tried without a jury, and the court found from the issues in favor of Mary J. Magers and rendered judgment in accordance with the prayer of her petition. The defendants below have brought the case to this court; and their counsel states that "the question at issue here is, whether this quarter-section of land belonged at the time of the levy of the attachments, to J. S. Magers, or to Mary J. Magers as a *bona fide* purchaser for value prior to the levy of the attachments. If she was such purchaser at a time before the levy of the attachments, then the plaintiffs have no case in their favor. If she was not, then the plaintiffs' liens are good, and the judgment rendered by the trial court should be reversed."

The claim of Mary J. Magers was and is that she purchased the land from A. D. Colson in December, 1877, through her son, J. S. Magers; that she went into possession of the same in March, 1878, and has continued to hold the possession under a claim of ownership ever since that time. The purchase-price of the land was about $2,800, of which there was paid at the time of the purchase about $1,000, and the residue of the purchase-price was secured by mortgages on the land. She claims that she furnished a considerable part of the cash payment, and that her son, who was then solvent, advanced the balance for her, and took the title in his own name as a security for this advancement; and that the amount so advanced by her son was repaid to him before May 8, 1880, when he executed a deed to the land, giving her the legal title. The truth of this claim and the good faith of the transactions involved mainly questions of fact, which the court has determined in her favor. A great deal of testimony was taken in the case, and much of it is so contradictory as to be irreconcilable. There is testimony supporting the claim and theory of the defendant in error, and therefore the finding of the court is conclusive here. It is in testimony that she had means of her own, and sent her husband from Ohio to Kansas to purchase a farm, sending some money with him for that purpose; that he began the negotiations for this land, but returned to Ohio before completing them, leaving his son to complete the

purchase, and turning over to him the money sent with him by his wife; that the money given to the son was paid by him upon the land; that she has since paid the amount of the first payment advanced by the son; that all subsequent payments of the mortgage debt on the land, and the interest thereon, have been made by her; that she has had exclusive possession of the land since March, 1878, has made improvements thereon, and has paid all the taxes charged against the land since she purchased it. There is much testimony opposed to that given in her behalf; but the district court had opportunities for determining the facts not possessed by this court, and on the whole evidence considered we cannot say that its finding is not sufficiently sustained.

Some objection is made to the testimony of Alfred Magers, the husband of the defendant in error. There is proof that he was authorized to act as her agent in the purchase of the farm, and in managing and carrying it on since its purchase. He was a competent witness to testify as to all the dealings and transactions which came within the scope of his agency. The objectionable testimony is not specifically pointed out, and possibly some of it given by him may not be strictly within the limit; but the case was submitted to the court alone, and the incompetent testimony referred to is not, we think, of such a character as to be prejudicial.

We find no error in the record that will justify a reversal of the judgment of the district court, and it will therefore be affirmed.

All the Justices concurring.